And before I forget, Mr. Walton, I want to thank you and your law firm for stepping up and doing this. You know, obviously you make a lot of money doing what you do, so right now you're not making any money doing what you're doing. So we appreciate you taking the assignment. Thank you, Your Honor. May it please the Court. There is competent evidence establishing that RPS Griffis punched Mr. Monts while he was restrained and passive. It is for this reason that Monts prevails on both the merits and qualified immunity issues. As a roadmap, I'll begin with key evidence, then turn to qualified immunity. Crediting Monts' evidence, he was completely passive and restrained until after the first punch. That comes from all of Monts' statements. Read them closely. He was passive until after the first punch. It comes from Campbell's declaration that refers to Mr. Monts as being completely subdued. It comes from Walker's declaration that states RPS Griffis told him— You're referring to the last two punches? Yes, Your Honor. So at this point, I am talking about— Because we're only—because you're not arguing about the first two punches. We're just here on the last two punches while he's restrained against the wall. Is that correct? That's correct, Your Honor, and that's the only use of force that— But he doesn't say he's completely passive. What he says is, I was completely passive and non-combative with the exception of attempting to get out of the hold and protect my face, which if you're restrained and you're trying to get out of the hold and protect your face, you're presumably trying to pull your arms forward. That's—I mean, maybe his intent was, in his own mind, passive, but if you were trying to pull your arms forward, that is a threatening gesture in this kind of a situation, isn't it? I don't think so, Your Honor. And to your question, you recited that correctly, and that's why I emphasized until after the first punch. If you read his declaration and statements, he's completely passive until he starts—he's restrained and he starts getting punched in the face, and then he tries to protect his face. And under this circuit's precedent in both Blankenhorn and Rice, once somebody—once an officer uses excessive force against somebody who is passive and restrained, they have a reasonable right to try to, you know, in this instance, protect their face. And the final piece and a key piece of the evidence was Walker's declaration, which refers to RPS Griffiths telling him that Monts never threatened him. And it's for this reason that there's a clear excessive force violation here. Going to the heart of the Graham factors is the need for force. Here there was no need for at least the first and second punches when he was restrained. He was passive. There was no need for it. And therefore, the analysis from the district court on this matter is incorrect. And turning to a second key piece of evidence, the expert report, the expert report doesn't blatantly contradict Monts' evidence. For one, the expert report is not objective evidence at all. It's wrong in some places. It refers to RPS Luckett being in the stairwell. RPS Luckett was not in the stairwell. I don't think the government will contend that today. It speculates. It speculates that Monts' injuries came from his face impacting the wall. Of all the eyewitnesses in this case, none of them say Monts had impacted the wall. Even if we conclude that we have to take as true, in drawing all the inferences from the evidence, that Griffiths did in fact punch him twice in the face while he was restrained by the others against the wall, what case clearly establishes that when someone is trying to get out of the hold and protect their face, presumably that they're bringing their arms up, that you can't use additional force to try and subdue this person who is fighting against the hold? Blankenhorn and Reischreiner, in both of those cases, there was an issue of the initial force that was used, excessive force, and in both of those cases it was disputed whether, at least in the Blankenhorn case at that point, whether Blankenhorn resisted officers after he'd been punched, such that they should have used the hobble restraints. So I think Blankenhorn established that. And they refer to a person's right to offer reasonable resistance when an officer engages in provocative or bad faith conduct. So I think Blankenhorn establishes it. So what is an officer supposed to do when someone is fighting against being restrained? So first, the person— Can't use any additional force? At that point, in that instance, he should have stopped punching and probably just, you know, helped restrain him. But your question assumes that he should have punched him in the first place. Mr. Mons wouldn't have went to protect his face had he not been punched. That's the same thing in Blankenhorn and Reischreiner, in Reischreiner where there was a takedown. Reischreiner didn't resist anyone. He was being led to the car just walking, and they tripped him and face-planted him into the cement. And at that point, you know, he resisted because he was being—excessive force was being used. So I think that's the key here. You really have to focus on the fact that prior to the first punch, there is evidence here that a jury may credit that he was completely passive and there was no need for the force. You keep saying the first punch. The first punch to me means the punch when he came through the door. Okay, so— You mean the third and fourth punches? The way you're saying it, Your Honor, I'm referring to the third and fourth punches. Okay. I consider the first two punches when he's going through the stairwell initially as irrelevant. We didn't appeal that issue. So I'm talking about when he's restrained. And so it's incomplete. It speculates about the head injuries. It's incomplete because it says Griffith's bloody knuckle injuries, you know, couldn't have came from anywhere. And it refers to Monts wasn't referring or wearing any jewelry on his face. However, it never discusses the likelihood that Griffiths could have punched the wall behind him. And more than all of these side, you know, holes in the expert report, it's not objective because it relies on the officer's statements. It relies on Griffith's statement that he sustained his knuckle injuries when he pulled his hands out behind Monts. Mind you, that's in contradiction to what all the patients say. And it's actually in contradiction to both what RPS Anderson says and what RPS Washington says. So the Scott v. Harris just clearly doesn't apply in this case. And with that said, I'd like to turn to qualified immunity. So the facts of this case are either analogous to or more favorable to Mr. Monts than the facts in Blankenhorn. Blankenhorn was a known gay member of a very violent street gang. And his pre-restraint conduct was more concerning than Monts. Prior to his restraint, Blankenhorn was angry and loud. He admitted that. And he was swearing. He put up his arms. He touched his chest. He pointed at the officer and approached him. And then he struggled with the officers for several moments. And then once he was on the ground, he was finally passive. And here, crediting Monts' evidence, he never struggled with the officers. He ran down the hallway, but he never struggled with the officers. So when you're looking at the governmental interest. Running down the hallway was pretty threatening when you're trying to run through a door that you're not supposed to be in. And especially the day after you've had a very, very violent incident. Can you imagine why an officer would be very apprehensive about whether Monts was coming back to ask him if he was overdue on his library book? Absolutely. Yes, Your Honor. And I think that's part of the reason we didn't appeal the first two punches. When he's coming through the door, someone's running at you. There's been an incident the day before. You may be alarmed. But then once you have three of your comrades, and they're large men if you look at the video, they're holding Monts against the wall. There's four of you now. There's more on the way. There's no reason in the world to punch that person. You might help restrain them, but there's no reason to punch him once, let alone twice, in the face of all places. So when you look at the pre-restraint conduct in Blankenhorn, far more concerning than here in this case. Also, if you look at the force, the force in Blankenhorn was at least one punch to the body. Here, Griffis punched Monts in the face at least twice. At least twice. There's some inconsistency between the patient's statements about how many times he was punched. I don't think that's material for summary judgment purposes. But here we know the force crediting Monts' evidence, and there was at least two punches. So Blankenhorn squarely governs. This is one of those rare cases where you actually have a case directly on point. And to the extent the government contends the facts have to be identical, they don't. They just have to squarely govern. If you look at Taylor v. Riojas, that's a recent case from the Supreme Court where, in fact, they overturned the Fifth Circuit for focusing on immaterial differences. And it's also clear from a number of cases from this circuit that have applied Blankenhorn, including Anderson v. City of Henderson, a recently decided case, or v. Brame, a recently decided unpublished case from the circuit, and even then-Judge Gorsuch's decision in the Tenth Circuit in Herrera v. Bernalillo County. With that said, if I may, I'll reserve the remainder of my time unless there's any questions. No, very well. Thank you. Good morning, Your Honors. May it please the Court. My name is Kim Chamberlain, and I represent the appellees in this case. Adam Griffiths, Sean Anderson, Eddie Del Castillo, and Rodney Washington. Here are the case properly applied, well-established summary judgment principles. Mons was aggressively exiting a locked facility where he was legally detained. Well, I mean, you say that the district court applied well-settled summary judgment. I thought one of the well-settled summary judgment principles is that the evidence of the non-movement is to be believed. And he says that he was punched in the face twice while he was restrained against the wall, and then he had eyewitnesses who backed that up. And somehow that didn't get believed. I don't see how that's consistent with summary judgment standards. Okay, I will first address the summary judgment standard and then the facts and how inconsistent they are. Summary judgment standard is, as we all know, that the facts have to be viewed in the light most favorable to Mons, demonstrating no genuine issue of material fact. A material fact is genuine if it's such that a reasonable jury could find for Mons. Defendant's burden at summary judgment is to show that Mons lacked evidence to prove his case, not to disprove his case. Once the defense does that, the burden shifts to Mons to designate specific facts, demonstrating genuine issues of material fact, significant probative evidence, evidence that must show more than a scintilla of evidence or some metaphysical doubt. If plaintiff's evidence is woefully sparse, summary judgment on excessive force can be granted. Henderson, be seated. Counsel, it's not sparse and it is probative. The only thing that you have is that there may be some inconsistencies, but you've got to read pretty deep into this record to be able to identify those inconsistencies in Mons' testimony or between Mons and the declarations from other prisoners. When you're looking at things like one prisoner says he got hit four times and he says, I only got hit twice, well, gee, everybody agrees he got hit. They just disagree over how many times they think he got hit. That's not a material difference. Well, I disagree with the assessment when you look at the totality of the facts. What may be the sole issue before this court is the last two punches, but we have to look.  When you look at Mons' evidence and how he changes his story, it's not just the number of punches that's in dispute. For example, Mons' demeanor. He was aggressively running through the door of a locked facility. Then he states that he was passive. So as soon as he went through the door, he became instantly passive. I would argue that adrenaline will not let someone do that and that he was passive. But this sounds like a closing argument to a jury, counsel. I think that's the point here is that there are, you know, you might be right, but he has witnesses that say, for example, that the officer said, I rocked that fool. So that would suggest that this was an opportunity by the officers to get payback on him for what he did the day before. Why couldn't the jury believe that as a potential outcome here? Well, because the lower court disregarded that because the court found that it would have been appropriate if Griffiths did punch Mons twice as he went through the door. So this non-eyewitness, his testimony is not relevant because Griffiths could have punched Mons twice as he went through the door and still not have used excessive force. But if someone says, you know, yesterday I rocked that fool, that's not the same as, well, yesterday I was, I saw a man run through the doors very quickly and in self-defense I struck him. I mean, those, rock the fool suggests this is payback for what happened the day before, that no one likes this guy. Look, there might be good reasons not to like this guy, but that's not a reason necessarily to punch him in the face a bunch of times. So I'm just trying to understand how with Walker's declaration, Statz's declaration, Campbell's declaration, and Mons statements, you've got four people who give a version that is inconsistent with the state's version. So why isn't that enough to get to past summary judgment? Well, for example, Corey Statz, who was one foot away from Plaintiff as he went through the door, did not see Griffiths punch him in the face as he went through the door. And yet he alleges that after Mons was restrained, he could see those punches that were further away and had more people. In addition, we have... And what's wrong with that? Has he been given an opportunity to explain how that's true? I mean, I would want to, if I were an inquiring judge or an inquiring juror, I would want to see a diagram of the floor to find out where he was and why he didn't think he could see the first punch, but he might have been able to see the fourth punch. That doesn't make it not competent evidence, and it doesn't mean that it doesn't contradict the state's version of events. Well, it also is very difficult with all of these versions of events for all of those things to physically have happened. There's also the argument about Anderson being pushed, pushing Griffiths away versus pulling him away. Well, pushing and pulling, one could think that those are very similar kinds of things. We're moving in one direction or another. If I get into a tussle with my colleague, Judge Owens, it may be difficult to tell at what point somebody's pushing and somebody's pulling. Well, we're talking a maximum of two or three seconds before there's other people on that stairwell. As you can see from the video, there are many more people right behind the five people, and Mont alleges this all happened within a couple of seconds. So we would have to believe that Anderson was holding Mont. A reasonable jury would have to believe that Anderson was holding Mont down, then realized Griffiths was punching, pushed him away, and then ran around to the other side of Griffiths, pulled him away, and dragged him down the stairs, all within about a two or three second time frame. And also, Mont's only admission is that he was never passive. Basic summary judgment principles from Anderson versus Liberty Lobby, credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he's ruling on a motion for summary judgment or a directed verdict. The evidence of the non-movement is to be believed, and yet here we have in the ruling, the court agrees that the objective evidence fails to support plaintiff's assertion that Griffith punched him in the face twice with a closed fist. So the judge has disbelieved what he said. I don't, how is that not directly contrary? You don't have anything like Scott with a video to show definitively. No, but the injury, another factor is the injury sustained by the participants. Griffiths obtained injuries on the back of his hands and the back of both elbows that simply cannot be obtained by punching Monts in the face. And yet Monts, by his own testimony in his own admission, says there was no scuffle with Griffiths, and Griffiths was never near a wall. So those, and what Dr. Horn's testimony does, he's a forensic expert, and what it does establish is that the injuries from his hands and his elbows was not obtained from punches. It was obtained from scratches against a rough surface. Now, he cannot preclude the fact that there was also punches. But again, we have to remember the few seconds that's involved here. There just simply cannot be all the movement that would have to be possible for all of Monts' claims to be true. And also, Monts says that his injuries were treated. The treatment of his injuries were the abrasions on his arm. He did not get abrasions on his arm from Adam Griffiths punching him in the face. There is just no evidence to support his version of events, and no reasonable jury could believe it, the totality of the evidence. No reasonable jury could believe this, and that's what the district court found, and I would urge this court to affirm that ruling. Do you have any other questions for me? Can you talk about qualified immunity and your response to their claim that Blankenhorn is as controlling? Yes, Your Honor. This opposing counsel confuses the Fourth Amendment with the Fourteenth Amendment. This case is a Fourteenth Amendment claim that is clearly established by Heydrich v. Hunter. It's not that plaintiffs didn't have Fourth Amendment rights. He does, but this incident is covered by the Fourteenth Amendment. Blankenhorn v. City of Orange is a case involving the Fourth Amendment, somebody who was not in a locked facility, not already civilly detained. He was a free person walking the street. There is no doubt that the four appellees here had the right to detain Monts from leaving a locked facility, whereas in Blankenhorn's case— Counsel, I'm not sure I understand your Fourteenth and Fourth Amendment argument. The court has told us that the Fourth Amendment is incorporated through the Fourteenth Amendment, so if there's a Fourth Amendment claim, then I don't think there's any difference between whether these are federal officials or whether they're state officials. Are you arguing this is not Fourth Amendment because it's something else, because it was not a search or a seizure, and therefore the Fourth Amendment doesn't apply at all, the Fourth Amendment as incorporated through the Fourteenth? Are you arguing this is in some way a substantive due process argument or something else? I'm trying to figure out what that analysis was about. Yes. An excessive Fourth Claim can be brought through the Fourth Amendment, the Eighth Amendment, or the Fourteenth Amendment. And there's a very specific analysis where the court must decide which constitutional amendment is at play. Now, as it turns out, the Fourth Amendment and Fourteenth Amendment excessive force claims are very similar analysis, but making them similar analysis does not mean that you can throw additional constitutional amendments. He was a civil detainee, and as such, this claim arises under the Fourteenth Amendment, and that is addressed again in Hedrick v. Hunter. But it would still be the case, whether it's Fourteenth Amendment or Fourth Amendment, that if he were genuinely passive and not resisting and were fully restrained, that you can't just give him a few more punches. True. But I would like to read just a couple of plaintiff's statements. Well, hold on, Counselor. Now it seems like we're going back to the facts again. In terms of Judge Collins' question, it's a legal question, I believe. Okay. I apologize. Right. Once, you know, there may be a point where you can punch the guy, but there's also a point you can't punch the guy. And so in that framework, what's your response to Judge Collins' question? Well, I will say that they had every reason to stop Griff Montz from leaving that locked facility. He admits he was going where he knew he was not supposed to be. He did it for the sole purpose of disrupting the facility. He admits to that. And the employees had not only a right but a responsibility to restrain him. By any means necessary? No. Well, if he was a danger to others, in this case, he certainly appeared to be. He was a danger to others? Well, he was a danger to the four officers because he was leaving the facility. Now, again, our testimony is that Montz was violent after going through the door, still exhibiting signs of violence, but that's not as effective as he really was. So are the officers raising a claim of self-defense? No. However, he was properly restraining Montz. All four people were properly restraining Montz. Montz was still fighting. So is it the government's contention that in order to restrain Montz, that they were entitled, that Officer Griffiths could hit him two more times in the face? That would just be a straight-up government argument, is that we're entitled to restrain him so we can hit him twice, and they're not contesting that, and we've got to hit him two more times after he's restrained, and that was okay. Is that the government's argument? No, but it is the government's argument that he was not passive even by his own admissions. Well, the concern I have, and I'd like to get a direct answer, if you're not saying in response to Judge Bybee's question that the Fourth Amendment or Fourteenth Amendment would allow them to punch him two more times after he was against the wall, if that's what we conclude the facts are, are you saying that for purposes of qualified immunity, that even if we conclude that they gave him two more, that Griffiths gave him two more punches, that qualified immunity would attach to the punches? Your Honor, I do believe that in this case qualified immunity should attach. While I don't believe it would be okay for an officer to punch someone in the face with close fist punches violently while he's being restrained by three other people, I do believe that that's not what the evidence shows. But assume we disagree with that. I want to know what qualified immunity argument you are and are not making. Assuming the facts as you just said them, that three people are restraining him against the wall and that there's two more punches with a closed fist to the face, are you saying that the thrower of those punches has qualified immunity? What I would say is I don't believe that that's an accurate characterization. I don't want you to argue with the facts again. Okay. Take the facts as I've given you and answer that question. Are you asserting that there's qualified immunity for those punches in that circumstance? No, Your Honor. Okay. Anything else? All right, thank you very much, Counsel. Thank you. You've got almost five minutes, Mr. Watson. Thank you, Your Honor. I'd like to just respond to Counsel's points regarding Blankenhorn. Blankenhorn wasn't just somebody walking, you know, down the street. He had been previously expelled from the shopping mall where gang fights occurred. He had, and the officers knew that, and he had been ordered not to return, and they believed that he was trespassing. Blankenhorn was somewhere he was not supposed to be. And in this case, Mons was somewhere he wasn't supposed to be. Well, but Blankenhorn puts weight on the fact that a jury could have concluded that his resistance was reasonable under the circumstances. That would be pretty hard to conclude on this record, even under his version of events, where he's trying to get out of the restraints and protect his face. So if I think you're talking about in Blankenhorn his resistance after the punches, before the restraints go on, or are you talking about their resistance in the struggle of being taken down? No, that discussion is referencing his, you know, that their response in what they're doing, they suddenly come on him, triggered a right to reasonable resistance, and it's in the course of that that the punches are thrown. So I think we have a different reading of the case, Your Honor. As I read it, he had the argument, he struggled, he's on the ground. At that point, he stops resisting, and he's punched. So it's on all fours. And then after that, after he's punched, it may be that he struggled such that they put the hobble restraints on. As for whether Blankenhorn's resistance was itself reasonable under the circumstances, the video appears to show that he tried to stay on his feet while three officers wrestled with him and, in Wynn's case, punched him several times. So we could conclude Blankenhorn's resistance was reasonable under the circumstances. So I'm just wondering, is that conclusion load-bearing in Blankenhorn? Because that factor doesn't seem here. He did not have any right to reasonable resistance here. So, Your Honor, I disagree. I think Mr. Mons had no right to resist initially, and he didn't. He was restrained against the wall, and he was passive. But once he was punched, a person has a right at that point to try to protect their face. And I think that's clear from both Rice and Blankenhorn. In Rice, you had the exact same issue, where the person was— there was a takedown, and his face hit the cement. And at that point, this circuit recognized that he had a right to offer reasonable resistance in response to provocative or bad faith conduct. So I don't think that's a way to distinguish Blankenhorn. And as I was saying, regarding where they were supposed to be, Mons wasn't supposed to be in that hallway. It didn't lead outside. It wasn't an escape. That hallway, as I understand it reading the governance briefing, just leads to a bottom floor. He was in a part of the facility he wasn't supposed to be in. And just a few points on the summary judgment arguments that counsel made. Walker's declaration is relevant for, among other reasons, that he's talking about rocking a fool. Generally don't use that language when you're referring to just defending yourself. And more than that, in that declaration, Griffis tells Walker that Mons never threatened him, which tends to show that he's talking about, at the very least, the punches while Mons is restrained. So Walker's declaration is relevant. I think the district court got that wrong. All of the cases that defendants cite and rely on for the merits issue can be distinguished by the fact here we have eyewitness testimony, three different eyewitnesses testifying. And that's just distinguished every single case they cite. And I also think as far as these inconsistencies in the witnesses' statement, there are inconsistencies. There are also inconsistencies in the government statements. You look at the incident report RPS Anderson authored a few hours after the incident, and he refers to the wrong people being in the hallway, only two people being in the hallway. That's ER 106. And he also says that RPS Griffis has face injuries. Take a look at the picture. He has no face injuries. In his responses to interrogatories, Griffis says, there were no visible injuries on my face. So there are inconsistencies here, but the core issue is they just don't matter for summary judgment purposes. Those are for a jury, I think. And finally, I want to just make clear that it's unknown how long the encounter lasted in the hallway. We can watch a video, and we know when people went into the room, and we know that more people came after. But it's nowhere in the record whether it lasted two seconds, ten seconds, twenty seconds. It would be pure guesses at this point because the record's not developed in that regard. If there are no further questions, I would ask that this court reverse and remand. All right. Thank you, counsel. Thank you both for your argument and briefing in this case. This matter is submitted, and we are in recess until tomorrow.
judges: BYBEE, OWENS, COLLINS